162 So. 67

**VEDROSS v. LaMOUCHEAUX.**

No. 33108.

May 27, 1935.

Theodore H. McGiehan, of New Orleans, for appellant.

George R. Blum, of Donaldsonville, for appellee.

ROGERS, Justice.

This is a suit for divorce on statutory grounds. The defendant, answering the petition, denied plaintiff's allegations, and, by way of reconvention, asked for a separation from bed and board on the ground of cruel treatment. The court below rejected both demands. Plaintiff has appealed. Defendant, whose reconventional

demand was rejected because of her condonation of her husband's alleged breach of marital duty, has not appealed nor has she answered plaintiff's appeal.

The issue presented is wholly one of fact, depending for its proper solution upon the credence to be given to the testimony of the witnesses.

The only testimony offered to prove the allegations of the petition was that of plaintiff, himself, the testimony of his sister, of her suitor, and of plaintiff's brother-in-law.

The record discloses that defendant arrived in New Orleans from her home in Prairieville on November 15, 1933. The next day she applied for an examination and for treatment at the Charity Hospital, to which she had been sent by her local physician. Defendant remained in the hospital for about a week, when she left the institution and on her husband's insistence went to live at the residence of his married sister, pending her continued treatment at the clinic conducted by the hospital. Defendant hurriedly left New Orleans for her home at Prairieville on the night of December 13, 1933.

The suitor of plaintiff's sister, who was one of the two corespondents named in the petition, testified that he met defendant for the first and only time about the 7th or 9th of December, 1933. That on that occasion he took her out riding and had sexual intercourse with her about 4 o'clock in the afternoon at a spot back

of the "oakes on Gentilly Road." Plaintiff's sister, who also lived at the residence of her married sister where defendant was temporarily residing, testified that about the 8th or 9th of December, 1933, she caught the defendant and the other named corespondent in her bed; that the parties immediately got up and went into the bathroom together; and that later they went out automobile riding. The witness also testified that she caught defendant kissing and hugging another man. Plaintiff's brother-in-law, who was not named in the petition, also testified that he was induced by defendant to have sexual intercourse with her. He sought to excuse his conduct by stating that he "had contusion of the brain" or he would not have done anything like that. This witness also testified that he saw defendant sitting on the lap of the alleged corespondent who did not testify in the case. Plaintiff, in his own behalf, testified that his wife told him that she had committed adultery not only with the two alleged corespondents, but also with a number of other men.

The trial judge, as shown by his written reasons on file in the record, was not favorably impressed by the demeanors or the stories of plaintiff and his witnesses. He reached the conclusion that their testimony was the result of a studied effort on plaintiff's part to get rid of his wife.

On the other hand, the trial judge was favorably impressed by the demeanors and stories of defendant and her witnesses. The defendant flatly contradicted the testimony of plaintiff and his witnesses. She not only denied having committed adultery with the two alleged corespondents, but also denied that she even knew them. Defendant further testified that on several occasions plaintiff's brother-in-law had made indecent proposals to her. She left the home of her husband's relatives on the night of December 13, 1933, when she was charged by them with having committed acts of adultery. She took refuge at the home of one of the neighbors, and later was driven by one of her father's friends to her father's home at Prairieville, where she arrived at about 3 o'clock in the morning and from where she telegraphed her husband.

The man whom plaintiff's sister testified she saw defendant kissing and hugging took the stand and corroborated defendant's denial of any such occurrence. Defendant was also corroborated by the same witness as to an indecent proposal made to her by plaintiff's brother-in-law. She was also corroborated by witnesses as to the necessity for her leaving the house of plaintiff's relatives and on being driven at nighttime to the home of her father at Prairieville.

The presumption is that defendant is innocent of the immoral acts charged in plaintiff's petition. Hirtzler v. Hirtzler, 161 La. 823, 109 So. 504. This presumption of innocence is supported not only by defendant's denial of the charges, but also by the testimony of her witnesses and the attendant circumstances. There is no sug-

gestion by any one that defendant was guilty of improper conduct at any other time in her life. On the contrary, there is abundant testimony in the record of defendant's good character and reputation for chastity in the small community in which she has lived all her life.

The trial judge held it was impossible to believe that having lived a virtuous life since childhood, the defendant, within the short space of less than one month that she was in New Orleans for the purpose of receiving treatment at the Charity Hospital, should have turned out to be a common prostitute, devoid of all decency, openly committing adultery in the daytime in the presence of her husband's family. We approve the holding. We have given careful consideration to the record and have reached the conclusion that it amply justifies the judgment rejecting plaintiff's demand.

For the reasons assigned, the judgment herein appealed from is affirmed at the appellant's costs.